**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| RONALD E. LIVELY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:07-CV-621 JVB |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Ronald E. Lively seeks judicial review of the final decision of the Defendant Commissioner of Social Security that denied his application for disability insurance benefits under the Social Security Act. For the following reasons, the ALJ's decision is affirmed.

**A. Procedural History**

Lively filed an application for disability insurance benefits under Title II of the Social Security Act on October 28, 2003, alleging disability beginning September 2, 2002. (R. 45.) The Indiana State Agency denied Lively's application initially and upon reconsideration.[1] (R. 25.)

On June 11, 2204, Lively sought appeal of the State Agency's denial notice of his disability insurance benefits before an ALJ. (R. 35.) On October 27, 2006, Lively appeared with counsel and testified at an administrative hearing before ALJ Stephen E. Davis in Indianapolis. In a decision dated December 21, 2006, ALJ Davis determined that Lively was not under a disability, as defined by the Act, because he remained capable of performing his past relevant

---

[1]State Agencies make disability determinations for the Commissioner. 20 C.F.R. § 404.1503.

work as an auto assembly plant inspector. (R. 11-17.)

On February 9, 2007, Lively requested review of the ALJ's decision by the Appeals Council. On July 17, 2007, the Appeals Council denied Lively's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. Lively then initiated this action for judicial review pursuant to 42 U.S.C. § 405(g).

**B. Factual Background**

Lively was 47 years old on the date of the ALJ's decision. (R. 11.) He has a 12th grade education and has worked as an auto assembly man and delivery man. (R. 11.) Lively claims he can no longer work because of knee, leg, neck, back, hand, elbow, foot, and finger pain. (R. 11.) Also, he claims he cannot lift or carry significant weight or sit, stand or walk for sustained periods. (R. 11.) He drops items such as gallons of milk and has a hard time driving since he cannot turn his neck to the left. (R. 142.)

**(1)** *Medical Evidence*

In January 2003, Lively saw Dr. R. Newton who noted that Lively did not have trouble getting on and off the examination table and was not using an assistive device. (R. 116.) Dr. Newton also noted that Lively had an unsteady gait and was unable to bend all the way over and get back up. (R. 117.) On a Range of Motion Chart, which is used when there is a limitation of motion, obesity or pain documented during the examination, Lively showed below normal ranges of motion for the cervical, lumbar, and shoulder examination. (R. 118.)

Dr. Raelinn Speikhout performed a physical examination on Lively on October 15, 2003, and completed a full medical history. (R. 109.) Dr. Speikhout observed that Lively does not use

any ice or Ibuprofen on his knee when it hurts and that Lively has neck pain when he turns his neck. (R. 109.) On examination of his musculoskeletal status, Lively showed a limited range of motion, flexion and extension, but his range of motion was almost complete, showing pain however, with hyperextension of his back. (R. 110.)

In January 2004, Lively visited the Arnett Clinic where he saw Dr. Jeff Duvall. (R. 77.) Dr. Duvall found that Lively had a limited range of motion, flexion, and extension and that he had mild discomfort around the lower portion of his neck. (R. 77.) The main findings were a limited range of motion in Lively's neck, but Dr. Duvall stated that the joint pain Lively was experiencing was difficult to classify in terms of the etiology of the symptoms. (R. 77.) Dr. Duvall also recommended that Lively see a neurologist and a rheumatologist. (R. 78.)

On September 21, 2004, Dr. Kaluta, the claimant's treating physician, diagnosed Lively with fibromyalgia and chronic back pain with a prognosis that identified Lively's impairments as a chronic disease with periods of improvement and exacerbations with no known cure. (R. 124.) A month before this diagnosis, Lively visited Dr. Kaluta, who found that while Lively continued to complain of widespread discomfort, laboratory tests for stiff-person syndrome were negative. (R. 125.) Lively's wrists, elbows, and shoulders had a good range of motion and his cervical spine and lumbar spine both showed reductions in rotation and flexion. (R. 125.)

Dr. Kaluta performed a Fibromyalgia Syndrome Medical Assessment on Lively on July, 22, 2004. (R. 130.) The doctor noted Lively's symptoms included chronic pain, morning stiffness, subjective swelling, numbness, tingling, and chronic fatigue. (R. 130.) Dr. Kaluta also indicated that Lively had limitation of motion in his hips, knees, and ankles, as well as his lumbar spine. (R. 131.) The aspects of workplace stress that Lively would be unable to perform

3

or be exposed to included routine, repetitive tasks at consistent pace, face paced tasks, exposure to work hazards, and shift work. (R. 132.) Dr. Kaluta also noted that the longest amount of time that Lively could sit and stand at one time was thirty minutes and that after this amount of time he must stand up and then site down again after thirty minutes. (R. 132.) The Assessment Form also indicated that Lively could only sit for about two hours during an eight-hour workday and also that he could only stand or walk for about two hours during an eight-hour workday. (R. 132.) Ultimately, as a result of Lively's impairments, Dr. Kaluta estimated that Lively would be absent from work more than four days a month. (R. 134.)

**(2)** *Testimony at the Administrative Hearing*

At the October 27, 2006, hearing, Lively testified that he always has pain and when he turns his neck, the pains go all the way down his back. (R. 147.) He also said that he loses his balance sometimes and falls down or almost falls down when he is in the shower. (R. 148.) Lively testified that the pain is constantly in his shoulders, neck, and back and sometimes he feels a sharper pain. (R. 151.)

With the pains, Lively noted, he has trouble sleeping and he is tired most of the day. (R. 149.) He testified that the pain in his shoulder causes him to toss and turn while trying to sleep. (R. 149.) Lively also testified that most of the time he has to sit with a heating pad and also using the heating pad when attempting to sleep. (R. 151.)

Lively testified that most of the time he spends the morning walking around the house trying to loosen up because he wakes up with aches and pains. (R. 153.) He testified that he had some exercises he was supposed to do, but does not do them because they hurt. (R. 153.)

At the hearing, Lively's friend, Laurel Sparks, testified that Lively cannot turn his neck

and that he has told her he does not drive. (R. 161-162.) She indicated that she takes Lively shopping and the longest she thought he would be able to walk without resting would be 30 minutes. (R. 162.) Sparks also testified that she has seen Lively's condition deteriorate during the 10 years she has known him. (R. 163.)

**C. Standard of Review**

The Social Security Act gives the district court the power "to enter, upon the pleadings and transcript of the record, a judgment, affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). The standard of review that governs decisions in a social security disability benefits case is a deferential one. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008).

The district court must evaluate only whether the "final decision of the Commissioner is both supported by substantial evidence and based on the proper legal criteria." *Id*. Upon review, the court will uphold a decision so long as "the evidence supports it and the ALJ explains [his] analysis of that evidence with 'enough detail and clarity to permit meaningful appellate review.'" *Id*.

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). To determine if there is substantial evidence, the court will review the entire administrative record, but does not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Id*. This standard does not mean "that we will simply rubber-stamp the Commissioners's decision without a critical review of the evidence." *Id*.

**D. Discussion**

**(1)** *Legal Framework*

In order to determine whether an individual is entitled to disability insurance benefits, "the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). The process is sequential, "and if the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then she need not progress to the next step." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**(2)** *The ALJ's Decision*

In his December 21, 2006, decision, the ALJ determined that Lively was not disabled and that despite having severe impairments, he can still perform substantial gainful activity. (R. 11.) The ALJ found that Lively satisfied steps one and two in the evaluation procedure for analyzing disability claims: Lively has not engaged in substantial gainful activity since the onset date of his impairment and there is objective medical evidence of impairments that significantly interfere with his ability to perform basic work activities. (R. 12.)

Next, the ALJ found that Lively did not meet step three in the analysis because his severe impairments are not attended by medical signs or laboratory findings which meet or equal in severity any impairment contained in the Listing of Impairments. (R. 12.) Also, the ALJ stated

that all of the claimant's impairments have been considered both individually and in combination throughout the five-step evaluation process. (R. 12.)

Step four requires a determination as to whether Lively can return to past relevant work and therefore requires an assessment of his residual functional capacity (RFC). (R. 12.) The ALJ determined that Lively was "capable of light level work with the following restrictions: no climbing of ladder/rope/scaffolds; only occasional stooping, kneeling, crouching or crawling." (R. 13.) On the basis of this RFC and other evidence the ALJ found that Lively's past relevant work was light and did not involve climbing of ladder/rope/scaffolds and only occasional stooping, kneeling, crouching, or crawling, which led to the ALJ's finding that Lively is able to perform his past relevant work. (R. 15.) Therefore, the ALJ found Lively was not under a disability as defined by the Social Security Act. (R. 15.)

**(3)** *Analysis*

Lively argues three grounds for reversal: (1) the treating physician's opinion was entitled to controlling weight because it was not inconsistent with the substantial evidence of the record.; (2) the ALJ failed to consider Lively's obesity in his determination, and (3) the ALJ erred in his determination that Lively could do his past relevant work. The Court will address each argument in turn.

(a) *Treating Physician's Opinion*

Lively argues that the treating physician's opinion was not inconsistent with the substantial evidence of the record and should have been given controlling weight. If the ALJ

finds that a treating source's opinion on the issue of the nature and severity of the claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

The ALJ dismissed the fibromyalgia assessment evaluation of Lively's treating physician, Dr. Kaluta, by stating:

> The claimant's treating physician limits him in the fibromyalgia evaluation, but his clinical reports show he too has not determined a cause for the claimant's symptoms. I cannot credit his limitations without support of clinical findings and having only seen the examiner a few times.

(R. 15.) Lively points out correctly that the ALJ is confused about what fibromyalgia is. The ALJ brushed off the diagnosis because it is not accompanied by clinical findings. He also jeered the fibromyalgia assessment of Dr. Kaluta during Lively's testimony on October 27, 2006, by saying that fibromyalgia was a diagnosis "that means they can't find anything wrong with you." (R. 148.) The ALJ fails to understand that the nature of this illness is such that its symptoms are entirely subjective and the cause of the impairment is unknown. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

However, the ALJ's failure to understand the nature of fybromyalgia does not invalidate his opinion, and he did not otherwise give insufficient weight to Lively's treating physician. Insofar as fybromyalgia's symptoms are subjective, the ALJ was entitled to discount Lively's allegations about the severity of his impairments so long as there was evidence supporting contrary findings. *See Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006) ("[W]hen evidence in opposition to the presumed fact is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the administrative law judge to

8

weigh.") The ALJ had such evidence at his disposal.

As the ALJ noted in his decision, Dr. Jeff Duvall, a consultative examiner, reported on January 14, 2004, that Lively's symptoms could interfere with his ability to work, but Dr. Duvall did not think that Lively's symptoms would preclude all work activity (R. 15.) Further, the ALJ noted that the State Agency physicians believed that Lively "could do light level work with some postural limitations" (R. 15.) Also, On February 10, 2004, Dr. B. Whitley, a State Agency physician, reviewed the evidence of record and opined that Lively could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and was unlimited in his ability to push and pull with his extremities (R. 80.) He likewise opined that Lively could occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; could frequently balance; and occasionally stoop, kneel, crouch, and crawl (R. 81.) On May 11, 2004, Dr. J. Sands, also a State Agency physician, reviewed the evidence of record and concurred with Dr. Whitley's assessment (R. 88.) The ALJ was most persuaded by the opinions of the State Agency physicians, as he found their opinion that Lively could do light level work "reasonable in light of the medical evidence." (R. 15.)

(b) *Consideration of Obesity in Consideration with Other Impairments*

Lively argues that the ALJ erred in his determination because he failed to consider all of his impairments in combination. The regulations require the ALJ, "in determining whether [the claimant's] physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, [to] consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523.

9

The ALJ found that the claimant's "impairments are not attended by medical signs or laboratory findings" and that "all of the claimant's impairments have been considered both individually and in combination throughout the five-step evaluation process." (R. 11, 12.) Here, the ALJ did not explicitly discuss the effects of the claimant's weight on other limitations.

According to SSR 02-1p, an ALJ should consider the effects of obesity together with the underlying impairments, even if the individual does not claim obesity as an impairment. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000). However, a failure to explicitly consider the effects of obesity may be harmless error. *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006).

Here the ALJ did not explicitly discuss the effects of the claimant's obesity, but the ALJ did adopt the "limitations suggested by the specialists and reviewing doctors" who were aware of the claimant's weight. *Id*. at 737.

A number of medical reports and opinions relied upon by the ALJ noted the claimant's height and weight, but the opinions as well as the testimony by the claimant fail to show how the claimant's weight exacerbated his physical impairments. The claimant did not specifically claim obesity as an impairment, but the references to his weight in the medical opinions were "likely sufficient to alert the ALJ to the impairment." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Here the ALJ adopted the limitations suggested by the "specialists and reviewing doctors who were aware of [the claimant's] obesity." *Id*. Therefore, although the ALJ did not explicitly consider the claimant's obesity, it was factored into the ALJ's decision indirectly as a part of the doctors' opinions and reports.

(c) *Residual Functional Capacity and Past Relevant Work*

The claimant argues that the ALJ erred because he did not perform a function-by-function assessment of the claimant's capacity in comparison to the claimant's past relevant work. To determine "whether [the claimant] is physically capable of returning to [his] former work, the administrative law judge obviously must ascertain the demands of that work in relation to the claimant's present physical capacities" at least where "there is evidence that the claimant's impairments are worse today than when [he] was working." *Strittmater v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984).

The ALJ cannot describe a claimant's job in a "generic way" and conclude on the basis of the claimant's residual capacity that [he] can return to [his] previous work. *Nolen v. Sullivan*, 939 F.2d 516, 518 (7th Cir. 1991). Instead, the ALJ "must list the specific physical requirements of the previous job and assess, in light of the available evidence, the claimant's ability to perform these tasks." *Id*. Importantly, a claimant has the burden of proving that he is unable to return to his past relevant work either as actually or as generally performed. *See Sears v. Bowen*, 840 F.2d 394, 399 (7th Cir. 1988); 20 C.F.R. § 404.1520(f). Furthermore, a claimant must prove that he or she is unable to return to his or her past relevant work either as he performed that work *or* as that work is generally performed in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The Commissioner points out correctly that Lively failed to present evidence that conclusively established that he was unable to perform his previous work. The ALJ found that Lively retained the RFC to perform light work with no climbing of ladders, ropes, or scaffolds, and only occasional stooping, kneeling, crouching, or crawling (R. 16.) At the administrative hearing, the ALJ asked Lively what his job entailed as an auto assembly plant inspector. (R.

11

143.)

Lively explained that he did not do any lifting, and that the heaviest things he used were light tools. (R. 144.) Also, while Lively testified that he was on his feet most of the time, he did not indicate that he was required to walk; moreover, he said he had a place to sit.

This testimony is consistent with the range of light work identified by the ALJ. Lively did not testify that his job as an auto plant assembly inspector required him to do any climbing of ladders, ropes, or scaffolds; any kneeling; or any crawling[8] (R. 16.) Although Lively testified that his job as an inspector required him to bend and reach over (Tr. 144), the ALJ found that Lively could occasionally stoop and crouch (R. 16.) The ALJ also inquired into the exertional and nonexertional/postural requirements of Lively's job, (R. 144) and Lively had the opportunity to set forth the particular demands of his job.

The Commissioner is further correct that the Dictionary of Occupational Titles describes the work of automobile manufacturing inspector as requiring light exertion. *See* Dictionary of Occupational Titles, Occupational Code 806.687-018. Finally, as the ALJ noted (R. 13, 15), Lively testified that he left his job as an auto assembly plant inspector not because of any impairment but because the car that was being manufactured at the plant, the Isuzu Rodeo, was being phased out (R. 145.)

In summary, the substantial evidence supports the ALJ's finding at step four of the sequential evaluation that Lively was not disabled because he could have performed his past work as an auto assembly plant inspector.

**Conclusion**

For the reasons stated above, the Court affirms the ALJ's decision.

SO ORDERED on September 30, 2009.

                                                  S/ Joseph S. Van Bokkelen
                                                  JOSEPH S. VAN BOKKELEN
                                                  UNITED STATES DISTRICT JUDGE